Is the appellant ready to proceed? I just wanted to say that I would waive any right that I had to not have questions. This is your time, so if you all have any questions, ask away immediately. I just wanted to put that on the record. I'm not sure if that was done yet. Thank you. You may proceed. Thank you, Your Honor. May it please the Court, This is a case of West v. Rieth. It's a case where a plaintiff has attempted to hold defendants accountable for the abuses for personal gain, military procedures designed to ostensibly deal with sexual assault and sexual harassment in the military. This case involves three groups of defendants, Your Honors. The first group are the accuser defendants who have been sued for state law claims of malicious prosecution and libel arising out of the false allegations of sexual assault. The government has intervened, moved to substitute based on certification of this conduct under the Westfall Act, which would ostensibly end the claims if successful. Now, our position in this matter is that the district court, which upheld the certifications, was incorrect based upon a finding that the factual issues were raised and were found that the evidence didn't sufficiently establish that the allegations were false. The second group of plaintiff defendants involve the civilian, I will call them administrators, of what is known as the Sexual Assault Prevention and Response Program. I'll call those individuals SAPR defendants for brevity. Claims against those defendants stemmed out of Bivens' claim for constitutional due process violations regarding their assistance in the false allegations as well as their interference in the investigation by NCIS. And the third group of defendants, Your Honor, are sort of a hybrid between the two particular defendants that were both accusers and in the alternative, if the court upholds the certification, we feel that they would be liable under Bivens as well, but that is made under an alternative theory. What's the group? You said the third group. Oh, the group is two particular defendants. It would be Defendant Reath and Defendant Parrott. The facts of this case, Your Honor, are contained within the pleadings and have been thoroughly briefed to the district court and, as mentioned by the government, contain over 300 pages of evidence. That's trial testimony, summarized trial excerpts, pretrial testimony, statements, and various documents, which is an important point that the government has not objected to. They haven't contested in any way. My plan was to read off some of those facts, but I imagine that I would trust that the court, and I imagine that you've familiarized yourself with the facts, gentlemen, and to the extent they are contained within the record of excerpts. The first point I wanted to address with regards to the Westfall certification involves the finding that under Osborne v. Haley, that the plaintiff's evidence was insufficient to establish that the allegations were false. Now, that... But this is a scope of employment issue. It's not falsity of the allegations. That's correct, Your Honor. This stems from... Evidence was insufficient to establish scope of employment? That question was not addressed, Your Honor. The scope of employment issue was, again, it's pretty much what we thought we were litigating at the outset. Now, the court cited the case of Osborne v. Haley, which is a Supreme Court case that indicates that if the certification... In other words, the plaintiff challenges the certification, and if the government's answer to that challenge is to say, well, the underlying facts didn't happen, well, then the Supreme Court said, well, the district court has to address the underlying merits of the factual allegations. And it's our contention that based upon that ruling, the Supreme Court required that the defendant or the government specifically raise the factual issues, and if so, based upon the fact that you're essentially depriving the plaintiff of a jury trial as to that, that they be given a fair opportunity to address those factual concerns, and none of that happened in this case. With regard to your question, Your Honor, the scope of employment, the district court did say as a legal matter that an allegation of sexual assault was not automatically, was not legally scope of employment just by virtue of a certification, and that the plaintiff could establish that an allegation of sexual assault could have been made for solely personal reasons, but the court didn't address the facts of that matter. They just discussed that as a legal matter. I would submit to the court that the facts in addition to the legal matter also indicate that as a factual matter, it's beyond the scope of employment, but I did mention in brief, and I can tell you that I'm less enamored with the scope of employment issue than I was before, because I understand that there's a lot of difficult sexual assault allegations that occur, and certainly the government should be able to certify some of them. Based upon, it is my understanding that there is a desire to increase the reporting. That being said, in this particular case, when you look at these particular facts, these individual accused defendants had a clear personal motive, and I think you can glean from the facts of this case that they were only thinking of themselves when they made these allegations. I understand that the Marine Corps, as the other branches have, have been working hard to strike at problems of sexual conduct in the services, and that they've established some very basic rules and enforcement processes for persons who claim to have been sexually abused by other members of the Marines here. That is the basis upon which this case really gets pulled up under Westfall. I would agree with that, Your Honor. I think the only position that we have here is- In other words, if the allegation had been that this defendant had assaulted a civilian out there and then was acquitted, as this one, as the sergeant was, that he may well have various state law remedies, for example, to pursue false allegations, et cetera. But the difficulty that he faces is that these individuals were under the reach, the umbrella of the Marine Corps, and they had obligations themselves to report and to do these things. And the assertion is that what you would be relying upon to show your malicious prosecution case are acts and conduct that were really required, the charges to be made by the military. At least, whether they be true or false, to bring them forward. Does that accurately describe what we're doing? I would say so, yes, Your Honor. I mean, I think the only issue that we would have with regards to the Westfall Act certification is that incumbent upon the military to create a process for reporting and dealing with instances of sexual assault. There needs to be a countervailing, I'll call it a check, to make sure that we're also prohibiting or preventing blatantly false allegations of sexual assault and abuse of that process. And that's the basis. I'm sorry, Your Honor. That is the basis of the general court-martial. What's that, Your Honor? This was a general court-martial. Hold on. One more time. This was a general court-martial. That's correct, Your Honor. It went to a general court-martial. He was found not guilty of the sexual offenses, but he received some punishment for conduct. He was found guilty of a sexual—actually, there were no sexual assault or sexual harassment charges brought. They brought under the facts. They brought them under—they did bring an assault. They brought maltreatment charges. He was convicted of an outlier—I won't say outlier, but the obstructing justice charge and trying to confront one of the accusers with her text messages. And then, of course, they got a hold of that. Obviously, that went the way of being convicted as to that charge. So, I mean, based on—again, the scope of employment wasn't really addressed in this particular case, in this context, because of the fact, under the Osborne case, it was dealt with under the merits. And I would say that, Your Honors, that I certainly understand that we are asking the court to take an unprecedented dive into what would, I would say, seem to be deep into the military's bailiwick here. But I would also suggest that— What's your best authority for us taking an unprecedented dive into the military? My best authority, Your Honor, is—I can only say that every case has a start. I would say that with respect to the Bivens claim, which I think is the meat of this case here, I'd like to start off with what this case is not. This is not a suit against the command for bringing these court martial charges in. It's not a suit against the civilian leadership for creating this system in which these false sexual assaults are prevalent. This is a case specifically targeted to circumstances of this particular plaintiff, these particular defendants, and I'm talking about the Sapper defendants and the accuser defendants, Reith and Parrott. And most importantly, I think the most important part is the context of this case is not dealing with military management. We're really dealing with a criminal justice matter that happens to occur within the military. I'd like to start with, you know, again, the Ferries doctrine, which is the basis, you know, Ferries is used to determine whether Bivens is going to lay in this case. That case law is, I guess for lack of a better word, very tortured. This Court has addressed it in— But yet it lives. Yet it lives, Your Honor, absolutely. And it's the world we've got to deal with. I would say that looking at the Reagan v. Starcraft, I mean, when you look at the incident to service test, that test doesn't really work here, doesn't really apply here, because in that case you dealt with a specific injury that happened in a specific place. When you deal with an allegation of, you know, a false allegation against somebody, their duty status really doesn't have anything to do with that. In other words, if I'm on active duty and I'm accused of sexual assault, the same thing is going to happen to me whether I am sitting and working in my office or whether I'm on extended leave in Bermuda. So in this case, the only connection that plaintiff had, you know, under the incident to service test was his being subject to the UCMJ, and this Court and other courts have clearly indicated that that is not enough to establish application of the Ferris Doctrine. But, again, that doesn't end the inquiry because you have all these other problems that, you know, where the test doesn't work, we have to look at something else. I would suggest to the Court, again, a big factor here is the context, is the military justice context. And when you look at the structure of the military justice context, when you have a case, it's a two-step process. You have the preferral step, which is similar to an indictment. Then you have a referral, which what that is is that is a transfer of the case, the transfer of the decision. I should tell you that I was a JAG officer for three years. Yes, Your Honor. I read that, and I apologize. I don't mean to patronize you. No, I think that I don't mind you doing that. That's fine. But I just, some of this is, I suppose. It is old hat, and I understand that, Your Honor. Again, I'm trying to tackle two beasts. But it's been a long time. No, I understand. But I think it's probably the same thing, probably saw some of the same things that we saw, Your Honor. But I would say that, you know, and as you're familiar with, Your Honor, certainly probably ran into the undue command influence issues many times. And you understand that. Counsel, you've got a minute and 20 seconds. You've got a three-factor test on the Ferris. You started with duty status? Is that the one you started with? I did start with duty status. You've got two more I'd like to hear you. I would say duty status. Sight of injury. Sight of injury is irrelevant, Your Honor. We don't, sight of injury is irrelevant. What he was doing was irrelevant. Because, again, we talked about it. It's not specific to where he was. I mean, in other words, again. It was a marine ball. Was that? Well, that was. And, Your Honor, if the court's looking to, do we look at where the allegation says he was? I think that gets into uncharted waters where we're already clouding a very already clouded area of law. But, again, I do want to touch upon the status of the defendants in this case. And that is, you know, they aren't uniformed. They are civilian. Now, that's not dispositive. But it's certainly important in this case. In that when you read the entire order, that their role is strictly oversight. And they are not within the military management vis-a-vis the plaintiff or any of the other defendants in this. And I'm about to run out of time. I reserve my time for rebuttal. Thank you, Your Honor. Thank you, Counsel. Appellee. Good morning. May it please the court. Sunny LaBeouf on behalf of the United States of America and on behalf of the seven individually named federal defendants in this matter. Your Honors, this case arises out of the fact that Plaintiff Luke West was a former service member in the United States Marine Corps. Because he was a service member, he was subject to the Uniform Code of Military Justice. Mr. West's counsel argues that the court is not being asked to take a deep dive into military matters. Everything about Mr. West's complaint as to the federal defendants specifically relates to the military justice disciplinary system. Mr. West was convicted following an investigation of reports as to his misconduct. And he was convicted for maltreatment of a subordinate, Rachel Allen, which did include repeated sexually suggestive comments. He was also convicted of obstruction of justice for confronting his direct subordinate through her immediate supervisor with 140 pages of text messages and instructed as to how she should respond to the upcoming court-martial. He was also convicted of a general article violation of the Uniform Code of Military Justice also related to the obstruction of justice charge. What was he acquitted of? He was acquitted on several counts as to charges of his misconduct or maltreatment of Aaron Parrott and Carrie Reed, as well as, Your Honor, Breanna Harper, who Mr. West decided not to sue. He sued four of the five servicewomen who brought charges or who reported his alleged misconduct. So there are three issues before the court today, three very narrow issues. One is whether the district court erred in denying plaintiff's Bivens claims as to the federal defendant. The second is whether the district court erred in using a preponderance of the evidence burden of proof in determining whether the federal defendants or the victims in this case were entitled to Westfall Act immunity. And the third is whether the district court abused its discretion in denying plaintiff's motion for reconsideration. We are asking, Your Honors, to affirm the district court's ruling in all respects and to dismiss the federal defendants in this litigation. I'll start with the first issue, and that is the Bivens issue. The district court did not err in denying the Bivens claims as to the federal defendants in this case. The Supreme Court has never extended a Bivens remedy in a military context, and plaintiff has offered nothing in this context which would support such an extension of the Bivens remedy in this case. Your Honor, the Bivens argument is premised on what constitutional violation? That's exactly correct, Your Honor. What is his allegation? His allegation is that his due process rights pursuant to the Fifth Amendment. Those would have to pertain to only the counsel conviction, then, in light of the fact that the system acquitted him of all the rest? Well, Your Honor, I would have to defer to him to make his argument, but I would say that the government's position is that he has not demonstrated that any of the federal defendants had any authority whatsoever over him. The four victims that he has sued were actually his subordinates in both rank and position within the finance section. And he similarly sued the sexual assault prevention and response employees, who are tasked with providing support to those individuals who are reporting sexual assault or sexual harassment claims. He has sued them. They have absolutely no authority over him in any respect. They have no authority over his constitutional rights, no authority over his due process rights, and no authority over NCIS. They had no authority over what charges would be referred and no authority whatsoever as to the general court martial. Does the UCMJ punish a false accusation? In other words, does the military system itself contemplate handling allegations of false accusations? Absolutely, yes, Your Honor. Did he pursue that internally? He did not. And, in fact, the Uniform Code of Military Justice covered all of the servicemembers' conduct, not just Plaintiff West. It also covered the servicewomen who reported allegations regarding Mr. West's conduct. And it has always been the government's position that their conduct and everything that Mr. West alleges should be governed within the Uniform Code of Military Justice because this all was specific to their United States Marine Corps service. Are they obligated to report? Are they obligated to report? Are you referring to the sexual harassment? The Marine Corps does request that individuals report immediately any allegations of sexual assault or sexual harassment, but I would not submit to the court that everyone always does because of the nature of sexual assault and sexual harassment claims. But that is what the Marine Corps does request of its servicemembers, both men and women. The district court rejected Mr. West's arguments that the military… The Marine Corps request is usually not infused with too much purgatory content. I'm sorry, Your Honor? A request in the Marine Corps is a little more perhaps than it is in civilian law. I understand, Your Honor. The district court did reject Mr. West's arguments that the military proceedings only tangentially related to his military service and held that the military disciplinary context of this matter particularly counsels against extending the Bivens remedy based on the factual and legal context here. Moving on to the Westfall Act immunity issue, the district court similarly did not err in concluding that Mr. West failed to demonstrate by a preponderance of the evidence that the victims were not entitled to immunity under the Westfall Act. Federal employees have absolute immunity from common law torts arising out of acts they undertake in the course of their official duties. This immunity is not just from liability, but it's from suit. If Mr. West's argument were to prevail, then what would in turn happen is a delay in terms of making a decision as to whether these federal employees are immune from suit would result in these employees having to individually defend themselves over the course of litigation while that determination is being made. And so in Osborne v. Haley, the Supreme Court affirmatively instructs that these decisions as to immunity have to be addressed very early on. And the district court in this case took great care and What do you understand his argument to be? Is it a temporal one or is it a convincing force one? What level of convincing force does the government have to show? What do you understand his Osborne argument to be? The Osborne argument, well, Osborne effectively establishes and confirms that it's plaintiff's burden to demonstrate, in fact, and not as alleged by plaintiff, in fact, that the federal employees were not acting in the course and scope of their employment at the time of the incidents alleged. And here the U.S. attorney certified the federal victims, as well as the sexual assault program employees, as acting in the course and scope of their employment. Additionally, Your Honors, The burden of production is on whom? Well, the burden of proof to demonstrate that they were not acting in course and scope is on Mr. West to show not just through his allegations, but that, in fact, they were not operating in the course and scope. And the government has maintained that in reporting allegations of misconduct as to Mr. West, as well as testifying regarding Mr. West's alleged misconduct, the federal victims were at all times acting in the course and scope of their employment. Judge Afric felt there was some uncertainty in guidance from our court, if not from other circuits. Is that fair to say? On the preponderance of the evidence issue, Judge Afric correctly asserted that the Fifth Circuit has not head-on addressed the preponderance of the evidence standard as to the quantity of proof. However, all of this Court's sister circuits that have addressed this specific issue on Westfall Act immunity have indeed indicated that preponderant evidence is the correct standard, and Judge Afric therefore used the preponderant evidence standard. And let me just add that in response to the government's motion to dismiss the federal victims and to substitute the United States, Mr. West filed six opposition pleadings and more than 300 pages of documents, which the Court accepted for consideration. Yet Mr. West still failed to meet his burden of establishing that these individuals, the federal defendants, in fact, were not operating in the course and scope of their employment. With regard to the motion to reconsider, Your Honors, the district court in no way abused its discretion in denying that motion. Again, after accepting and considering six pleadings and more than 300 pages, the judge reached a decision on the issue and any arguments that could have been made or should have been made earlier as part of the six prior opposition pleadings. Your Honor, the United States Marine Corps clearly has an obligation to protect against conduct prejudicial to good order and discipline. They are responsible for defending the United States at home and abroad. It is clearly reasoned that having service members freely report allegations of misconduct, even including sexual harassment and assault, is within their service members' obligations. This, Your Honor, at the district court level, in response to the government's 12B1 and 12B6 at issue here, Judge Afric received and considered a record that is almost 4,000 pages. His decisions are exactly right. We ask that Your Honors would affirm the district court's ruling in dismissing the federal defendants. If there are no questions, Your Honors, the federal defendants, including the United States, as well as the seven individually named individuals, will rest on the briefs. Thank you, Counsel. Thank you. Mr. Bottom. I just have a couple of points that need to be addressed, Your Honor. I mean, the counsel for the government referenced, I thought better than I ever could, the amount of evidence that has been put into this case, and I think she referenced 4,000 pages of evidence. So I would submit to the court that there is not a lack of evidence with regards to whether or not the allegations were true or false. And I'd also submit to the court that as to the question of whether or not the allegations were true or false, that the probative value of that evidence, I believe with all due respect to the government and to the district court, is inarguable. Now, that's a different question between the underlying merits of the case and whether or not the allegations were within the scope of employment. And I think that the government is correct that the scope of employment issue, it is preponderance of evidence. The question that I initially raised was when they deal with facts that deal with the merits of the case, what is the appropriate standard of proof? I have to say looking at the Osborne case, if it applies, it doesn't mention it, but if it applies, I would have to concede that the preponderance of evidence would be the standard. But again, that court was very specific as to when on a Westfall Act certification, district court is going to go into the merits of the case, you know, vice looking at the question of scope of employment. And I think, Your Honor, that before you have a situation where the district court is going to take up a question of the factual matter away from the jury, which clearly the plaintiff has a right to, before he does that, those issues have to be raised and there really has to be a fair opportunity to address those issues. And again, whether in the context of the motion to reconsider or denial of a motion to take evidence, that wasn't done in this case. And essentially that's the plaintiff's point, that I think where we are now is the scope of employment question. Again, factually that has not been addressed by the court. And I would imagine that, you know, that could be a subject for remand or that this court, it's our position that this court has enough evidence to actually say, even with respect to, and I concede the point of the military's interest in dealing with this issue of sexual assault and people not wanting to come forward, you know, but at the same time, I mean, the government and the military has to take into account, regarding their purpose, they have to take into account potential for abuse. And the facts of this case do not indicate that, you know, and assuming that the government has done that and counsel has not said otherwise, assuming that the government's purpose is, well, we want to encourage reporting of sexual assault, but we also want to discourage abuse, that this case and the facts thereof are clearly indicative of abuse for personal gain and based on the facts that, you know, it's our position that that cannot be a basis for a scope, of a proper scope of employment. Now, another mention that counsel talked about the charges for which Plaintiff was convicted. Now, I do need to mention, since counsel brought it up, that those charges are on appeal and, you know, again, certainly concerned with a ruling from this court having an adverse effect on that appeal with respect to the merits of the false allegations. Again, Your Honors, I just want to reiterate, you know, that I certainly, you know, appreciate your time and I understand what we're asking the court to do. And the court rightfully takes a good long pause before it jumps in and asserts its authority in a case like this. And by all means, I would encourage the court to take that pause. If the court would prefer a supplemental brief, I will write a supplemental brief on any issue that the judges feel are necessary to get a proper decision in this matter. With that being said, I want to thank the court for its time and consideration. Thank you, counsel. That concludes our oral argument docket.